John S. Arts v. Pellant Verde Good morning, Runners. May it please the Court, I'm John S. Arts on behalf of Pellant Verde. We're here today on an appeal from the District Court of its grant of summary judgment of non-infringement that certain of athletes' push rods did not infringe the 315 patent suit. On the issue of infringement, the configuration of the accused's push rods is not in dispute. The issues really relate to claim construction, namely the District Court's adding of a term that it called the further claim limitation, as well as its construction of the term end portions. Also at issue is the interpretation of this Court's prior opinion. This is the second time we've been before this Court in this case. The same issues are being cast here today as they were previously. Before, the issues were anticipation with respect to Japanese references. The Court found that those references were not anticipatory of the 315 patent claims. Did the Federal Circuit in Verve II define the term length? I mean, they talked about the length of the rod. Was it defined in the record in any way? It didn't say length equals, but length means its ordinary meaning of from tip to tip or one extremity of the rod to the other. If you look at the Japanese references in view of what the claim language is of the 315 patent, that's what length means. What at least would have you accept is that length doesn't mean the length of the rod. It means only a portion of the rod, namely the middle portion. Part of the confusion here perhaps stems from the fact that we talk about midpoint, endpoints, tips. Based on the specification, I mean, was there a representation here? Did the parties submit to the district court their position as to what end portions are, how long they have to be? I mean, was there a... No, and I think this is one of those issues where if you're talking about claim construction, the claim terms could have their ordinary meaning without any construction, namely the middle portion is the portion between the end portions. Yeah, but if you don't know where the end portions begin and end, you can't possibly define where the mid portion begins and ends, correct? No, I don't agree with that. Partly because the specification, I mean, dimensionally I don't agree with you that it has to be X number of inches in terms of the end portion because the specification in column 2 specifically indicates that the middle portion and the end portion can have varying sizes. And the way it's defined is by functionality. Prior art, including the Japanese rods, were a longer length, the same diameter, namely 5 sixteenths of an inch. And this is also in the background of the 315 patent. An inventor had done some work with straight pushrods. And what he did, which was novel, and this court recognized it in its prior opinion, is he created a pushrod with a middle portion at a larger outer diameter than the end portions. And as this court recognized, it was that novel shape that provided the advantages and benefits of increased strength and stiffness. But how are we supposed to know what on earth is covered by this patent? If the mid point can be this big and the end points can be that big or the end points can be this big in the middle. How are we supposed to know? Then you cover everything? You cover every rod that has end points and mid points irrespective of where the end point starts and the mid point ends? Is that what's covered by the patent? No, what's unique about the patent is that you have a middle section of the rod that has a larger outer diameter than the end portions. I think the actual dimensions of the end portion aren't critical. What's required by the patent claim, claim one specifically, is a pushrod having basically three distinct components. A middle portion, a pair of opposing end portions that are located on opposite sides of the middle portion, and then rounded seats at the tips of the rods for engaging the respective valve seats as this thing vacillates and reciprocates within an internal combustion engine. Are rounded seats part of the end portion? Yes, they are, but they are a discrete part. So we're not concerned with their diameter? I mean in the claims when you talk about the... No, they are. Because the rounded seats are part of the end portion and the claim says that the end portion has to have a lesser diameter than the middle portion, as this court told us in Verve 2, the entire end portions have to have a smaller diameter than the mid portion based on its construction or its interpretation of the Japanese references, not just a portion of the end portion. The entirety of the end portions have to have a smaller diameter than the middle portion because it's... I know you've argued that in your brief, but where in our prior opinion did we say that? Yes, Your Honor. It's on page... The site of it is on page 1118. It says the 315 patent claims a hollow pushrod whose overall diameter is larger at the middle than at the ends. And the way that that is construed in connection with the 315 patent specification, the only meaning that that can have is that the entirety of the end portions has a smaller diameter than the middle portion. And the reason being is because if you take a look at these Japanese references, this was all argued previously, but that the Japanese references are concerned with the formation of these hemispherical shaped ends. And they have these constrictions, which admittedly, as the Japanese references teach, are the weakest points of the rod. The rod has the same diameter. The Japanese rods belong an entire length from one tip or extremity to the other tip or extremity. And what the district court did, based on Apley's urging, was add this further claim limitation that says that the middle portion, when this court said length of rod, it really only meant the middle portion. And that in order to infringe the claim, not only do you have to meet every element set forth in the claim, you have to meet this further claim limitation, which isn't set forth in the claim. And the further claim limitation required that the space between the end portions, the middle portion and whatever other structure was there, cannot have a constant diameter. And it subsequently concluded that rod types C and D, which are attached to the addendum to the district court's opinion and which correspond to defendant's accused push rods, do not infringe. And if you take a look at the addendum, which is attached to the back of our brief, it bears record site 48. I think, unfortunately, in the record, it's maybe not as good a representation or reproduction as it is attached to the brief. But rod types C and D clearly have end portions and a rounded seat. And the end portions clearly have a reduction in diameter, as called for by the claim, that is less than the outer diameter of the middle portion, regardless of where you specifically delineate the middle portion. So I'm just looking at the Japanese model in our verb 2 case. If what they call the tips, if that rounded seat, that bulb at the end, if it went in but then went out again, and the diameter of the outer portion was as wide as the midpoint, then that would infringe, right? That would not infringe. Correct. And that is what we believe this court found or held in the verb 2 decision. And, indeed, appellees, after this case was remanded to the district court, that's exactly what they told the district court that this court found. It's on page record site A1690 is the page from their brief where they said to the district court, after this case was remanded, the Federal Circuit found that the middle portion 28 of the illustrated rod in JP808 was not larger than the diameter of the end portions 29C or B because the larger diameter of the rounded tips was apparently the same as that of the middle portion 28. So their reading, immediately after getting the opinion, is the same as what we're advocating today. They subsequently had to change their position in an effort to try to support the district court's inclusion of this further claim limitation, which doesn't appear anywhere in the claim. It was not called for by the intrinsic evidence whatsoever. How did this happen? I mean, did the other side then, when it got back after remand, did the other side posit that? Was this something that was argued back and forth? Yes, it was, and here's what happened. In the first appeal, they said, we think we don't infringe in the alternative the Japanese references anticipate. The court said, in addition to indefiniteness, Japanese references are anticipatory references. We appealed, and this court said, no, they can't be anticipatory. We reversed. So then they came and started arguing the other side of the quorum, the district court, and said, you know what, we can't infringe because our push rods are identical to Japanese reference. And you already found that the Japanese references don't anticipate the claim, so they've taken the old axiom, that which infringes if earlier... I'm sorry, that which infringes if after anticipates if earlier. They've kind of reversed it and said that if it doesn't anticipate, then it can't infringe. But that just doesn't follow, and if you take a look at the configuration of the rods, either the Japanese push rods have the same diameter across their entire length, namely the hemispherical ball, as this court, we believe, found and they admitted, or they are entirely lacking in other portions. Let's try and focus on what the argument really is here, because it seems to me neither side is directly confronting what the prior art says, what was argued to this court the first time around, and the decision which distinguished the Japanese prior art and therefore sustained the validity of the patents as far as anticipation was concerned. And as you apparently agree, part of that focus was indeed the fact that there was a uniform diameter over the length of the rods until you get to the end pieces, or until you get to the end, never mind the end pieces. Until you get to the tips, to the very extreme uniform diameter along the length of the rod, when we attached the arguments in the appendix that we set forth, we argued, and they didn't dispute it on the first appeal, the Japanese references, and we showed in our brief that the ball-shaped ends had the exact same diameter as the middle portion. The issue was whether, as I recall the illustration, they were not the same diameter, they were slightly lesser in diameter, but that that was not deemed dispositive. The argument came before that the issue on which it turned was whether in fact the patented device had along its length a uniform cross-section, as did the Japanese references, or had a broadening, bulging, or conical, or any of the various terms that were used to distinguish the Japanese references. And it seems that it was a fairly straightforward distinction because the patented rod is not of uniform diameter along its length. I respectfully disagree with Your Honor's recollection of the arguments that were made before this court in the prior appeal. What you have just said was not what was argued to this court with all due respect and was not, in our understanding, the basis for what the Verve II opinion was. The arguments that were made by us, the appellant at that time, was the Japanese pushrods were not anticipatory for two reasons. One, they didn't have end portions. Two, or three reasons. Two, that the appellant's pushrod does not cover hemispherical ends with constrictions because that's simply a different animal. And third, that the diameter of the hemispherical ends, to the extent that they are considered end portions, is exactly the same as the diameter of the middle portions. And if you look at the written description of those Japanese references, there's nothing in there that supports that these hemispherical ends have a lesser diameter than the middle portion. It's based solely on them drawing lines on the figures, which is just as this court has held is not proper to try to get dimensions. But the decision of this court was that the reason the Japanese references did not anticipate was because they were of uniform cross-section along the substantial central part of the rod. Agreed, and that doesn't change the argument as we're making it today. The Japanese references from one end to the other. But they say that therefore, since they're products except for A and B, but that the others are also of uniform cross-section until you get to the ends, that they can't be covered by the claims as construed. Well, the requirement you're just reading in is not required by the claims, namely that the middle portion has a constant diameter. In fact, all that's required is that the middle portion have a larger outer diameter than the end portions. And that is clearly met by C and D. What you are talking about, where it gets to a smaller diameter near the end, is what's shown by E. And I see that my time is just about up. Before you sit down, let me ask you one question, just to follow up on what Judge Newman was discussing. And that is that the claim recites middle portion, two end portions, and rounded seats. Now my question is with respect to the Japanese reference, are the constrictions part of the end portions or the rounded seat portions? The constrictions, the entire hemispherical shaped head, in our opinion, would be part of the rounded seat. With the constrictions. And the reason being is because the purpose of what those constrictions are, or the reason that they're put in there, is to allow for a little bit of movement of the pushrod within the valve seat, such that the valve seat won't get hung up on the rod. It's basically called a clearance. I understand, and I agree. Because I think that's how the court was looking at this when the case was here last time, that the rounded seats and the constrictions were all part of the rounded tip, and that the court observed that the distinction of the claims over the Japanese reference is that the Japanese reference had a uniform diameter throughout. That's the middle and end portions were uniform, as opposed to the claims. And in fact, I think that the same view was conceded by your adversary in their brief at page 31, that all areas, this is at the bottom of the page, all areas of segue or step down from the constant diameter middle portion toward a tip of lesser diameter than in the middle portion must by logical deduction be regarded as part of the tip. And it seems to me that's a fairly straightforward way of rationalizing the opinion last time and evaluating the claims for purposes of infringement now. I agree. That's why we said the two alternative bases, because it wasn't clear, but it's clear that the Japanese references had a uniform diameter along the length, which we believe... Independent of the ends. Independent of the ends, correct. And the ends being the rounded part and the constriction, all part of the ends. That being the tips, or the rounded seats at the tips. Yes. But not the end portion. Correct. I just want to make sure. You had asked about the novelty. There's also a substantially constant wall thickness limitation. Okay. I hadn't answered your question before. Okay. Thank you, Mr. Jones. Mr. Wynn. Thank you, Your Honor. To us, the main issue here is what did the Federal Circuit mean when it said, and I'm going to start using your own words, at page 1121 of the reported opinion, it said that... Well, first it remarked, and I'll just paraphrase it, it remarked that there was a distinguishing difference. Then it said that the drawings of the Japanese patents in the 315 reflect this distinguishing difference. So now the question is, what did the Federal Circuit mean when it said that the drawings in the Japanese 808 and 315 reflect the distinguishing difference that the Japanese pushrods are not wider at their mid-portion, like the 315 rods, but are of uniform diameter along their length. Now when they say along their length, when I go back to third-grade diagramming of sentences, along their length is referring to at their mid-portion in that sentence. Why? Where do you get... It's in the same sentence. It's a modifier. That's very poor sentence construction, I'm sorry to say. But isn't the length simply the length of the item referred to as 28A in the Japanese patent? That's the middle and the end. It's all the way to that point where it begins to step down, where the constriction starts. That's the mid-portion. The constrictions and the rounded tips, 28B and 28C are part of the rounded tips, so it's not part of the middle or ends of the length of the rod. That's right. And the Japanese rod then would not have an end portion that was lesser in diameter than the mid-portion. So by natural, logical deduction, the Federal Circuit determined on the Japanese rod, the 808 shown in your opinion, that the end portion is the very extremity of that middle portion before it constricts and goes into a lesser diameter tip. Otherwise, you would have found that the Japanese patent anticipated the 315 patent, because then, had you not so concluded, you would have concluded that the constrictions and the tips representing the end portion are lesser in diameter than the middle portion, which would have ripped right on the claim. But if you're correct, and if we agree with you, and that's the proper way to read our opinion when the case was here last, then what is the basis for the district court's determination that the end portion must be a constant diameter or that there must be a taper throughout? Because I don't see, or I don't understand, I don't understand the reason why the district court concluded that the end portions must be a constant diameter or that the rod must have a taper throughout. I don't think they did it that way. But what they did do is they took your opinion and said that the middle portion cannot be the end in the patent. The end portions have to be a lesser diameter than the middle portion. Where is the end portion in the Japanese patent? Where is it? Well, it has to be at the very extremity of the main portion, which is straight. It's the ends of the element labeled 28A. Yes, that's right. Just before the constrictions and before the tip. Where else is it than in the Japanese patent? Where is the end portion? I think you construed the claims back in the last appeal and applied those claims to the Japanese claims. You found that this patent of the Japanese rod was not anticipated because of the straight wall in the middle portion. In your language, that's how I interpreted it. Where, then, would the end portion be in the Japanese rod? If it's not anticipatory, it means it doesn't infringe. It means the end portion can't be a lesser diameter than the middle portion. Where is it? It's part of the length. It's the end of the length. That's correct. It's the two ends of element 28A. Yes, before the constrictions. That's correct. Well, what's the problem, then? That means that rods like that do not infringe because they're not anticipatory, they're not infringing. It sounds to me as if you're construing the patent claim so it reads directly on your products. No, no, no. We're simply taking the construction rendered by the Federal Circuit. Where is the end portion that the Federal Circuit determined it to be? Where is the middle portion that the Federal Circuit determined it to be? And is the end portion, when you apply those definitions, to any product, is the end portion lesser in diameter than the middle portion or not? Forget the tips. You said forget the tips. Irrespective of the tips. So forget the tips. Where's the end portion and where's the middle portion? Find out at any rod, according to your kind of interpretation, and see if it infringes or not, or anticipates. And the point we're making is that when you determine that the rod, the invention that's described in claim in the 315 patent does not encompass a tube of uniform diameter along its length. Okay? What in the Japanese patent is uniform in diameter along its length? It is that mid portion. Oh, if you look at the drawings. Well, I thought you said that 28A includes the end portions, too. I thought you just agreed with Judge Lin that that was the case. 28A in the Japanese patent. Yes, yes. The length of the tube. Does that include the mid portion and the end portions? 28A, yes, includes both end portions and the mid portion, yes. Okay, so that's the uniform diameter. And then the 28B and C, those are not end portions. Those are part of the tip. Okay. That's correct. So now the trial judge did not agree with either of your claim interpretations or either of your views of how to interpret this court's prior opinion. Is that what you're telling us? No, not at all, Your Honor. I'm sorry to make you think that. I didn't mean to. No, I think the district judge below studied very hard what the Federal Circuit had determined and tried to, just like the Federal Circuit before, determine where is the end portion and where is the middle portion and which diameter is bigger than the other and how can it possibly infringe. That's what he did. He was slavish, to your opinion. In fact, if you study the whole opinion, it's very long, but 95% of that opinion is not even before the court today. There's only two or three pages of the opinion, the last two or three pages, where he addresses non-infringement, that are really pertinent. He doesn't cite all of the interpretations and claim stuff that he did. He goes right back and only back to the Federal Circuit opinion, and he cites only the Federal Circuit opinion for determining non-infringement because he's only applying the Federal Circuit's claim construction. That's all he's doing. But he concluded that what labeled 28A in the Japanese reference was the middle portion. Yes, that's correct. That's what cannot have a uniform diameter. As opposed to 28A being both the middle and end portions. And that's why he concluded that, well, the only way I can square all of this is if the middle portion is tapered throughout, because it can't be uniform. Well, he didn't say that either, because that was my argument as to the natural, logical projection from your previous Federal Circuit opinion. Well, since you earlier agreed that 28A represented both the middle and the end portions, are you disagreeing with your own argument? No, no, no, it does, it does. The end portion, as you defined it, as it applied to this Japanese rod in the opinion, the end portion is a point. It is the two points, actually, there's two end portions. It is the extremity of the rod of uniform diameter. Everything distal to that is the tip. Everything further out from that is the tip. Let me see if this helps. If we look to the very tail end of the brief, these various accused structures, take item C, if you just disregard the tips, the ends, then you have a middle portion with a larger diameter than the end portions, correct? Yes, but that's not an infringement of the Federal Circuit claim interpretation because you said that the claims of the 315 pattern do not encompass a tube of uniform diameter along its length. Well, this doesn't have a uniform diameter along its length. It has a larger diameter in the middle than it does at the ends. I have to go back then to the misrepresentation, perhaps innocent, but nevertheless a misrepresentation made in the last appeal. The appellants today, then appellants as well, took a edge of some kind and extended it across that rod and made it look like the tip is the same diameter as the main body. I pointed out to you in my brief in this appeal that that is absolutely incorrect. You take those figures from Japanese patents, particularly figure 5, which I grew up with so you can read it better, and it's clear that the Japanese patent never, ever had tip diameters the same as the main body. That's a clear misrepresentation. Now, if you bought into that, which I don't think you did, if you look at the Japanese patents, it shows that they are somewhat reduced diameter. Does it not? I think it does. I think visually it shows a reduced diameter in the tip, I mean the ball. The maximum diameter in the ball is not the same as the diameter in the main body. And the opinion recognized that. It said whatever the diameter of the rounded tip. The opinion recognized precisely that. Well, I thought you read it right the first time around because you can't possibly argue that the Federal Circuit previously limited the distinction to rods of the Japanese type that only had the same diameter in the tip before rounding as they had in the main body. They can't possibly. In your view, did the District Court make any significant mistakes in its interpretation of the prior opinion and in its application? Not in this part of the opinion, no, Your Honor. I quarreled. I've told my opposing attorneys before. I thought that when the District Judge grappled as he did with issues that are difficult like obviousness, and he had a Markman hearing and all, he worked very hard at that and labored with some of it. I was critical of a couple of pieces of his overall claim interpretation. But none of that that I'm critical of is pertinent to this part of non-infringement because it's based solely on the Federal Circuit opinion. This further limitation in the District Court's opinion says a rod does not infringe if it has a constant diameter in the space between the rod's two end portions. So that's the requirement that it be tapered throughout. Yes. Well, I think that's the judge's way of... He follows the Federal Circuit opinion. Well, if that is the correct interpretation of that claim, is there any structure disclosed in the patent that shows a taper throughout? In the patent itself? In the patent itself. Yes, absolutely. Figure 1. Figure 1 doesn't show a taper throughout. Yes, it does. And that's the figure that the Federal Circuit put in the last time around. But that has... 16 is the middle. It may look like it comes to a point, but 16 doesn't... There is a length to 16. You can see that in Figure 4. And you can see that if you read the description. There's nothing that suggests that there must be a taper throughout. Quite the contrary. It seems to me... Well, if you look again at Figure 7, you see that the middle portion has a length. These are not tapered throughout. In the 315 patent, Your Honor? Yes. I'm not sure what you're looking at because I can't see. But what I was referring to is this figure given in the Federal Report of the last appeal that was put in there by the Federal Circuit, I thought, to illustrate how different it was from the Japanese routes. That's a fully tapered route. It certainly does that. But the question is whether it is tapered throughout. And my point is I don't see anything in the patent that suggests that it's tapered throughout, meaning that the middle portion comes to a point. Quite the contrary. I see much in this patent that suggests that the middle portion, 16, has a length. I don't see that. Here's the thing. Look at Figure 4, for example. It's an intermediate step. I have a patent. Is that the intermediate step, Figure 4? That's an intermediate step, and I don't think the switching operation does it to reduce it. And I might add, maybe that's what made this patent read on the prior art. That's the problem. You can't, on the one hand, make a distinction between prior art and patents and then ignore it when it's coming back up again and forget that you distinguished it from the prior art to a point of validity and now forget about that distinction and claim that it's infringed by essentially the prior art. That's what's going on. And there was a misrepresentation as to whether the distinction... When they drew those lines out in the prior briefing and argued that the Japanese rod has the same maximum diameter in the tip as it has in the main body, that's simply incorrect. Just not right. The diagrams don't support that. I can't believe the Federal Circuit would have bought into that. I don't believe they did. So the distinction can't be based on the fact that the rod of Japanese was uniform throughout its length. Only the rounding was unimportant. Because that's not what the Japanese diagrams show. Okay. Any more questions? Okay. Thank you, Mr. Wynn. See, Mr. Arts, you have a minute or so. Thank you, Your Honor. I just have two quick points. And the point in response to Judge Lenz's comments is that the flat cylindrical portion clearly shows there's no taper throughout in Figures 2 and 4, but it also says in the specification, Column 2, the desired shape of the push rod after the swaging operation is shown in Figure 2, period. It is characterized by a relatively thick, flat cylindrical middle surface. So that demonstrates that the further claim of location cannot be correct to the extent it requires it to taper throughout. And secondly, we still believe, as we argued in our prior brief, this is in response to a statement about misrepresentation, to take it seriously, that the Japanese push rods do disclose tip portions that have the same diameter as the middle portion. In fact, they haven't offered any evidence to the contrary, other than attorney argument. And the Federal Circuit has said, in its own precedent, occurs in the Halberstadt, that under our precedent, however, it is well established that patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue, which the specification the Japanese patents are completely silent on the issue. The only evidence of record regarding the diameter of the tips of the Japanese reference doesn't come from them. They didn't offer any expert testimony. It comes from our expert, Dr. Burrell, who said the Japanese references are concerned with the formation of the tips, and in his opinion, the ball-shaped hemispherical tips have the same outer diameter as the diameter of the end portions. And that was also, in addition to the fact that Japanese references don't have end portions, the additional reason for supporting uniform diameter along its length is that the tips also have the same diameter as the middle portion. Thank you, Your Honor. Okay, thank you, Mr. Arts. Mr. Wynn, case is taken under submission. Thank you, Your Honor. All rise. The honorable court is adjourned until this afternoon at 2 o'clock in the afternoon.